and 6103 Southeast Property Holdings v. Stewart. Mr. Gall, is that pronounced? Richard Gall. Thank you. And thank you. I think it's still good morning. May it please the court, I am Richard Gall. I represent the appellant SE Property Holdings LLC, which I may sometimes refer to as SEPH. The Tenth Circuit requires strict adherence to Congress's requirement that bankruptcy lawyers who represent a debtor quickly disclose their compensation agreement, their compensation amount, and their compensation source. This court said in investment bankers that this requirement is mandatory and not permissive. Further, the court said in investment bankers, the Tenth Circuit, that attorneys forfeit any right to the fees they received by violating Section 329. In this case, the debtor's attorney, Welch and Welch Law Firm, did not disclose their compensation agreement, did not disclose their compensation amount, and did not disclose the compensation source for over two years to the tune of over $350,000. In fact, the court in SEPH, at a hearing unrelated to that fee issue, the court said, caught the fact that this had not been disclosed, and the court worried that if it had not been caught, that it might never have been disclosed. Add further to that conduct, which is what the compensation to the attorney was, and Welch did not allow the attorney to say, even though Congress obviously requires that to have been said. Furthermore, the attorney, Welch, did not correct his client, the debtor, when the client misstated what the source of the fees were. Counsel, let me ask you this, because to me, it's important that I understand what the district court did. It looked like that he dressed down pretty much the conduct in this, which led me then to look, okay, what I saw that the court did was when he ordered the $25,000 sanction, and it was a total different meanings in regards to that. Do you see this as a sanction or a disgorgement order? This is an important question. What 329 says is you must disclose, this court has said, in fact, in the Gray case, this court said that the court should lean to 100% disgorgement, a lean. I won't go so far as to say presumption, but certainly a lean. Here, it is questionable whether the bankruptcy court, which is the court in question here, actually ordered disgorgement, because the $350,000 at issue here, the $25,000 that was paid, you know, didn't even come from the 350. It was actually taken from additional funds that were held by the entity Nevervee, which I'll talk about. But what the court did was not order disgorgement, arguably. What the court did was order a sanction. And here's where the bankruptcy court got it wrong. Here's where the error occurred. Here's where the misapplication of the law occurred. It is this. Rather than looking at the law with respect to disgorgement in 329 and bankruptcy rule 2016, which requires quick disclosure, the court decided that the court didn't want to order 100% disgorgement, which is the lean in this circuit, and wanted to do something less. So when the court decides, and let me say, in investment bankers, the court said unquestionably, this court said at the very end of the opinion that it did look at whether the court had discretion to authorize, in the investment bankers case, it ordered full disgorgement. But then the question becomes, if the court is to say there is some measure of discretion, what is the measure? What is the measure to be used of something less than full disgorgement? We know there's a lean to full disgorgement in this circuit, but if you're going to do something less, what do you do? The Tenth Circuit BAP, in this case, which was the prior court, the BAP, meaning the Bankruptcy Appellate Panel, said that when the court wants to do something less, i.e. the bankruptcy court wants to do something less than the lean to full 100% disgorgement, the BAP said that the Tenth Circuit had not said yet what that measure should be. And that, and I will simply say this, what the bankruptcy court did here was pivot away from a standard of measure that has been used within this circuit and pivoted unnecessarily to a sanctions measure. A Rule 11. Yes, I should say Rule 11. And the court said, and let me say this, within this circuit there has been a real development of the law we see in the courts below, using what I will call the egregiousness standard. If you look at the Brown case and the Wright case from the Bankruptcy Court for the Northern District of Oklahoma, and then it cited the Smitty's case from the In looking at what the measure should be, look at the egregiousness of the nondisclosure, i.e. not the person, but the egregiousness of the nondisclosure. I dare say you'll never find a set of record facts with more egregious conduct. Now I don't say that to dress down my opponent. I'm a bankruptcy lawyer, Mr. Welch is a bankruptcy lawyer. We're brothers in this practice. That's the way I look at it. But the actions still remain. And here's a key distinction that I would like to make. Rule 11 sanctions are different from 329 disgorgement. Here's why. Let's think about Rule 11. The ruling on a Rule 11 issue is often non-monetary. It often has zero to do with money, frankly. The attorney is a signatory. The attorney is at issue making a representation in how important it is in the signing. It looks at the attorney and what's the point to prevent frivolous violence. 329 disgorgement is different and bankruptcy court is different. Why? It's all about money. The courts have said in developing this law that the bankruptcy attorney in that situation is looked as a fiduciary. So when you're talking about money, you're looking at the attorney as a fiduciary. And there, you're looking at the actions that were taken, i.e. the egregiousness of the non-disclosure. And importantly, the congressional record tells us why 329 is what it is and why this court has said is mandatory and not permissive. Because it is for several reasons. It is for protection of the bankruptcy estate, protection of the creditors, significantly the quick disclosure is required because it is incumbent upon the bankruptcy judge early on to be able to examine, to be able to scrutinize the arrangement that the attorney has, the fees that have been set forth, and importantly, the source of those funds. Also, I'm sorry, Judge. Well, counsel, I understand and probably I think the court does where you're coming from. Where I'm going is what prohibits, looking at what the bankruptcy judge did and what the bankruptcy judge said, what prohibits him from doing a Rule 11 sanction? What prohibits it is, is that 329 disgorgement is the issue. Well, is that the law? I mean, the question is, that's why I asked the question to begin with, is if this was a true sanction, then why is it illegal? You've got to explain to me why the bankruptcy court didn't have legal authority to exercise a Rule 11 sanction, which is what this is. I mean, that's what he claimed. May I supplement that question? Sure. Supplement it this way. Are you saying even if he could have imposed a Rule 11 sanction, he had an obligation to impose a sanction under 329A? Had an obligation. A Rule 11 sanction could have been done, but this was not a Rule 11 situation. This was not a signing of a pleading. 329, and this court in Investment Bankers and in Gray, for example, says disgorgement is the issue. This court has said the result of not disclosing is forfeiture. So that's why we're saying the bankruptcy court, perhaps in an effort to come up with or fashion some lower amount, looked, what can the court look at? Well, the court looked in the wrong direction, is all we're saying. And what we're asking ultimately is that it be reversed and remanded with instructions to the proper resolution. What is the proper resolution? The case law has, let's remember here, what we're talking about is Section 329 in 2016, and this court's rulings that forfeiture is the standard and a strong lean to disgorgement. Well, I know. I just want to jump in there. So you're asking for an order that says in 329, you can't look to Rule 11, go back and do it over? Yes. But with no guidance. No, with guidance. Absolutely. I apologize. The guidance that we would suggest and what has developed in the Tenth Circuit, given this court's strong statement that we should lean to 100%, and given this court's strong statement that it's mandatory and not permissive, if the bankruptcy court is to be given a measure less than, right, if you're going to do less than 100%, the courts in this circuit have developed the standard of egregiousness to say, let's not look at the, think about it, the court in here looked at the person. But how is that different than looking at Rule 11, I guess? Oh, it's different because. I mean, maybe you've already covered this, but it seems like Rule 11 looks to egregiousness as well. Well, what it looks at is the person. Has this person been sanctioned before? Can this person, how much can they afford to pay? But it looks at egregiousness, doesn't it? You could say that it does, but it really looks more at the person. And you know what? In Rule 11, what the rule seeks to do is to impose the least necessary sanction. Not necessarily, counsel. I still sit as a federal district court judge in New Mexico, and I've issued a few sanctions. And what I'm concerned about is you're asking us to make a rule, and what Judge Allerton is, that the bankruptcy judge cannot use sanction as a form of discipline. It has to use disgorgement. No, I'm not saying that, Your Honor. What I'm saying is sanctions, fine. That's another thing. That's a completely other thing. If the court wants to sanction conduct based on Rule 11 signing, that's one thing. But we have ventured out. We have ventured out of 329 in 2016 when we're talking about Rule 9011, 9011 in bankruptcy courts. We've got to stay in 329. And what the courts have said is, in that instance, you look at the egregiousness of the conduct, the egregiousness of the nondisclosure. Excuse me. Yes. I've let you go for 12 minutes, and it's all been very abstract. And we need to talk about the facts here if we're going to be able to give any guidance whatsoever. And the facts are quite important to me, so let me ask you a little bit about the facts. My understanding is that the debtor had already been required, in fact, settled with the trustee and paid $750,000 that had been improperly transferred from the estate. There was a, the term escapes me. You know the term. I do, I do. Did that happen? Well, what happened. That money had been, that assets had been transferred to the children and was considered a fraudulent transfer, essentially. There was a settlement of that. And what I would say simply is this. The fact of that does not alter the outcome of this case. Well, why do you, you don't think that helps you? Oh. See, you're asking us not to consider the person. And frankly, the person looks, it looks very shady to me. It does. And you're refusing to address that because he's your brother in the bar and you don't want to say anything personal. I know it's wonderful in the bankruptcy courts, the attorneys get along so well, but you have, but you're not going to change the law. It's terribly, it's terribly. So, is that correct? It's terribly. There was a $750,000 fraudulent transfer, right? Yes. Okay. That should alert people. Then there's this money that he's just saying, we're going to pay your attorney fees out of the BP settlement. Do we have any ruling by the bankruptcy court yet about whether there was property of the estate involved there? Your Honor, may I reserve on that? No. Tell me the answer. Well, Your Honor, there has not been a determination on that. There has been, in fact, there's a non-dischargeability case that remains pending on that issue and there's a compromise motion that has been ruled on by the court, but it doesn't alter the outcome of this case. The court did find that fraud. Just answer my questions about the facts. I'm trying to . . . I'm not understanding. Because I can't understand how the judge can decide what the proper result of the 329A proceeding should be without having determined whether the attorney fee was paid out of property of the estate. And that was not done in this case, was it? She never made that determination. It has never been made and it remains a possibility. And it also looks like one reason not to disclose this fee is because it might suggest that there was property of the estate out there from the BP settlement that had not been disclosed to the bankruptcy court either. Is that correct? Yes, and that is our position. It's either property of the estate or it's security of our client and it's so important because . . . Well, doesn't that go to egregiousness? It does. If it's not disclosed because disclosure of the fee might disclose an even worse violation, not disclosing property of the estate, then that should be a consideration here, should it not? Yes, and think about this. So why don't you say anything about this? You're trying to protect your brother in the bar. Not necessarily. What I'd like to say is it's so important because why? Think about this. Had the disclosure occurred two years before when it was supposed to occur, then we would have dealt with this early and we wouldn't be dealing with it now. You had 12 minutes to go through that. I'm going to ask you some fact stuff here. Yes, sir. Do we know what he was paid for, what work he did that led to the incursion of the $350,000 in attorney fee? That's a big attorney fee. Was that because he was working on the fraudulent transfer of assets from the estate? Was that part of what he did? When he finally made his disclosure, we were then finally, after the two years, able to see that the work that was done was charged against the fee for work that he did for the debtor, which included... A lot of that related to the dispute of the $750,000, right? It related to a larger dispute regarding a fraudulent transfer. Our position was the fraudulent transfer was worth far more than $750,000. When the judge says he did a lot of service for the client, and that's the reason I'm not going to reduce the fee that much, that service to the client was representing the client in a fraudulent transfer from the estate. Is that correct? In part. That just can't be. I don't disagree. Obviously, we're here before the court. I'm a big believer in not dressing down my opponent. It's very difficult to do that. Regardless of that, it's very hard to write an abstract opinion saying this should be the standard. What you do is you have facts, and sometimes all you can do is say, that was too much. That was too much. And you could do that here. You could say we have a firm conviction that this is too much, and given the circumstances, absolutely can say that in this case. Thank you.  Thank you, Judge. May it please the court. I'm David Cheek. I'm here representing Reston C. Welch and his law firm, Welch Law Firm, PLC. Mr. Welch is sitting at council table here today representing the stewards, but I'll be making the presentations. I believe the bankruptcy court framed the issue as succinctly and directly as is necessary. And in her order, she says, she found there was a clear violation of 329 and Rule 2016. The question before the court is what should be the consequence of such violation up to the ultimate sanction of disgorgement of all fees received by Welch for the bankruptcy and related adversaries. She treated this as a disgorgement is a form of sanction, and I think that is the appropriate approach. Clearly, there was a violation. We've never disputed that. The violation was failure to report the fee arrangement and failure to report that there were fees recovered and paid to the bankruptcy court. Your Honor makes a point that the facts are important in this case. And I may have gotten them wrong, but I wanted to raise that, and I hope you'll respond to it. I will. I will. I want to respond directly to it. These possible claims were absolutely disclosed to the bankruptcy court. They were disclosed to the trustee. You mean the claims with the BP? The BP claims. We're talking the BP claims. I am. Were disclosed, and, in fact, they're quoted in the brief. At what point were they disclosed? Were they disclosed before the fees were disclosed? Yes, they were. When this bankruptcy started, the claims were pending. And they were disclosed in the initial filing, initial petition? I believe they were, Your Honor. If they weren't, there was a statement made in open court, if the trustee or the creditors want these claims, we'll transfer them. And that's quoted in their brief. At that time, the belief were that these claims were going to take a long time to resolve. As it turns out, the federal court in Louisiana set up a procedure and allowed those claims to be resolved in a relatively short time, given what litigation takes. Those claims were not necessarily property of the estate. They belonged to non-debtors. I'm just going to say, did the court make that finding? That finding, when she approved this compromise and entered an order settling this case, those claims were deemed abandoned. And so she's abandoned those claims in exchange for getting $750,000 cash from the debtor. What about the claims? The money for the attorney fees, in part at least, came from BP claims by entities that aren't... They're non-debtors. They're non-debtors. Yes. Were those claims disclosed? Yes. The claims by the non-debtors were disclosed in the petition for bankruptcy? I wasn't counsel at the time the petition was filed, so I can't answer that, but it's... The claim, as I understand it, was that the amounts from the awards to the non-debtors that were used to pay attorney fees were essentially dividends to the debtor, and therefore were property of the estate. Well, I have to tell you, I don't believe that's right, because I think the non-debtors guaranteed the attorney fees as part of the fee arrangement, and they paid those fees as guarantors. Was that non-debtor's guarantee, was that disclosed before the attorney fees were disclosed, the fact that these non-debtors had guaranteed the fees? I don't believe they were, Your Honor. Would that not be property of the estate, or would it be? I'm not an expert on that. I don't believe that would have been necessarily property of the estate. It'd be an interesting thing to look at. You would think that the trustee and the creditors would want to look at that, wouldn't you? Yes. And that would be a good motive to conceal if you're trying to conceal that. One way to conceal it is to not disclose your attorney fees. The testimony of the bankruptcy trustee at the hearing on this issue of disgorgement, he clearly said that Mr. Welch came to him and explained these claims to him and explained the relationship between the non-debtors and the debtor. The debtor owned 50 percent of the non-debtor corporate entities. He was managing partner of each of them. This was explained to the bankruptcy trustee, and he expressly said, I'm not interested in pursuing those. And that was done. I don't know about the schedules. I just can't talk to it. But the testimony of the trustee was clear that he knew, and it had been fully disclosed to him what these claims might be, how they related to the debtor, and he elected not to pursue them. So there's no concealment here. The whole thing is concealment. That's what the disgorgement is. There is a failure to file the forms in a timely fashion, and you're absolutely right, and that was not done. And so the question becomes, what's the remedy? Let me ask one more. Well, no, you had a question. No, go right ahead. Go ahead. The fee strikes me as a large fee, $350,000. Do you know what work required that, what issues required that much work? Well, there were a number of issues. There was a whole 2004 hearing process that these parties went through that was contentious. It was time-consuming. Did the alleged fraudulent transfer have much to do with that? There were four adversary actions filed in this case that alleged some form of fraudulent transfer, and the defense of that, of those claims, were involved in the legal fees. The transfers themselves were done long before Mr. Welch got involved in this case, and he was not the author or the, he didn't design these. He was defending the claims, and, yes, they were. Okay, that's good to know. You know, the hearings on the disgorgement, Judge, there were 14 full days of hearing on whether. On the disgorgement? On this disgorgement. There was no issue too small to argue about in this case, and there were another four days on a motion to abandon. Evidentiary hearings on motions to abandon certain properties, there were days on motions on injunctive relief, which ultimately, they weren't full-day hearings, but they required time consumption. There were multiple entities other than that the debtor owned some interest in, in some capacity, the never-be-entity, for instance. The other 50% owner tried to disclaim their interest and couldn't. This wasn't a routine bankruptcy. This was a hotly contested one. Let me ask one more question. Okay. I think this is my last one for a while anyway. Has the bankruptcy court decided whether the fees came from property of the estate or not? No, sir. That's still to be resolved? No, sir. It's resolved in the fashion that she has approved the compromise, which resolves those claims, which, and I believe that order, it's cited in footnote three on page 11 of our brief. It is a reported case, but I'm reasonably certain in representing to you it expressly says those claims are abandoned. And that was done before the disgorgement proceeding. Is that right? No, sir, it's not. That order was pending at the time the disgorgement pleadings were going on, but, no, the order was entered afterwards and, frankly, after this appeal was filed. Okay. So it's a subsequent event. Well, now you're saying that this was an order of disgorgement applying Rule 11 sanctions, but did the bankruptcy court make a determination that if there was, as to these other outside claims, how much, if any of that, would have gone into the estate? The 300 and whatever thousand, you know, the fee that he was paid. Yes. The bankruptcy court said that was a separate matter. But did they determine, there had to be a determination if she says all of it, or he says all of it is to non-debtors, how much would have been, if that's what the term, was there a factual finding ever presented that as to how it became all non-debtor money versus that how much, it had to be an argument, well, if it belongs in the estate, how much of it belongs in the estate? Her order finds that if she ordered disgorgement, it would have to go to third parties. It would not be returned to the estate. That's the, her order is the only. Is there any facts, though, that show, what are the facts, Judge Hart, what are the facts that show that all that goes to non-debtors? There had to be an argument about it. Well, the facts were that Mr. Welch got $104,000 rough as a contingent fee, which he applied to the debtors' account. The two debtors, Shimmering Sands and Neverbe, received roughly $700,000, no, $200,000, and he applied $203,000 from those, leaving $71,000 in his trust account. There was a tracing of the funds, if you will, that came from Neverbe and Shimmering Sands. Neverbe applied, under their guarantee, $200,000 to the debtors' account. Mr. Welch, who had received a contingent fee, and that's documented that he had a separate contract with the attorneys in Alabama who actually handled those BP claims, and he applied that. Was there ever a determination by the bankruptcy judge that if it was determined that there was a disgorgement, how much under disgorgement was he going to have to put into the estate as a penalty? As a penalty? No, there was no order to that effect. She concluded that she was going to have to give it back to non-parties, and the estate would not receive any. Okay. So that's how, in the conclusion that applying Rule 11 sanctions to the theory of disgorgement, $25,000 out of his pocket got paid into the estate. Practically, that's correct. She came at it in a little different way. She said the statute doesn't tell us. 329 doesn't tell us what the remedy is. It says it may be up to disgorgement and, frankly, up to no future payment. It doesn't say it has to be. That's where she started her analysis. The cases also say you've got to look at all the facts of the case. This bankruptcy estate received the benefit of third-party funds. She'd have to give it back to third-party funds. She even concluded the third parties might just go ahead and pay Mr. Welch anyway, and she couldn't control that. So this estate was not harmed. There's no actual harm to it. She elected not to disgorge. Now, the Tenth Circuit has affirmed 100% disgorgement routinely, but they never said that has to be the only result. In the Gray case, which is where some of the most draconian language is, and, of course, that is a conflict of interest, a direct fiduciary responsibility, which I would argue in this case is not the situation, and it did not disgorge all fees. It disgorged some. No one has given us any guidance on if you want to do a partial disgorgement, what do you look to. Rule 11 is a pretty good place to start, and the Howard Avenue opinion out of the Fifth Circuit Florida court is not a bad second choice, and it deals with all the facts of the case. We believe this is an abuse of discretion standard, and you must accept the court's decision, even if you think she could have done something different, unless you've got a five-day-old stinking fish laying there. We don't believe there's any stinking fish here, and my time's up. Thank you, counsel. Your time expired. If you have anything with regard to correcting a factual matter or something like that, you can talk briefly about that. I'll give you that time, but no more about... Thank you. Sorry. Thank you, Judge Hartz. I will limit what I have to say. There was no disgorgement hearing. There was no disgorgement hearing. The additional part of the appeal here is that we asked the court to vacate the order because the court used a standard no one had ever heard of, and didn't hear evidence, didn't allow discovery. And you know the court in this case, rather than using evidence, rather than allowing it, indicated that the court was going to use her personal knowledge of Mr. Welch because they had practiced together, which had nothing to do with in-court record evidence in this case in fashioning this. There was no disgorgement hearing. We asked for one. The other reason for our appeal is to say, please, please, reverse and remand and send us back with a standard of egregiousness, and let's have that hearing. Let's have that evidence. Let's determine. I wanted to correct a couple of other things. I'm sorry, Your Honor. Your time is up. Thank you, Judge. I wish you had talked about facts, but you wasted your time on that. Thank you. Thank you, Judge. Case is submitted. Counselor excused. Court is in recess until 8.30 tomorrow morning.